NO. COA13-1101

NORTH CAROLINA COURT OF APPEALS

Filed:  5 August 2014

STATE OF NORTH CAROLINA

    v.

GREGGORY GEORGE MOSHER, JR.
    Defendant

Onslow County
No. 10 CRS 53914

Appeal by defendant from judgment entered 23 April 2013 by Judge Charles H. Henry in Onslow County Superior Court.  Heard in the Court of Appeals 6 February 2014.

*Roy Cooper, Attorney General, by Teresa M. Postell, Assistant Attorney General, for the State.*

*Cheshire Parker Schneider & Bryan, PLLC, by John Keating Wiles, for defendant-appellant.*

DAVIS, Judge.

Greggory George Mosher, Jr. ("Defendant") appeals from his convictions for one count of felony child abuse resulting in serious bodily injury in violation of N.C. Gen. Stat. § 14-318.4(a3) and one count of felony child abuse resulting in serious bodily injury in violation of N.C. Gen. Stat. § 14-318.4(a4).  Defendant's sole argument on appeal is that the trial court erred in entering judgment on both of his

convictions because the two offenses are mutually exclusive. After careful review, we affirm the trial court's judgment.

**Factual Background**

The evidence presented at trial tended to establish the following facts:  In September of 2009, Defendant married Rebecca Mosher ("Ms. Mosher") and became a stepfather to her two young children, "Amy" and "Noah."[1]  Defendant was deployed to Iraq in December of 2009, and when he returned from his deployment, he lived with Ms. Mosher and the children at a home in Richlands, North Carolina.  Their next-door neighbors, Jack Underwood ("Mr. Underwood") and Justus Underwood ("Mrs. Underwood"), had observed bruising on the children before the subject incidents.

On 14 May 2010, Ms. Mosher, accompanied by Defendant, visited the Underwoods' home and requested that Mr. Underwood examine Noah's arm, which was swollen.  Mr. Underwood recommended that Noah be taken to the hospital because he might have a broken arm or wrist.  Mrs. Underwood testified that during this encounter, Ms. Mosher was standing behind Defendant and trying to catch her attention in a way that Mrs. Underwood interpreted as meaning: "This is suspicious; you need to pay

---

[1] Pseudonyms are used throughout this opinion to protect the privacy of the minor children.

attention." Later that day, Ms. Mosher showed Mrs. Underwood marks on the children's bodies, including bruising on Noah's arm, legs, and side and bruising on Amy's back. Mrs. Underwood further explained that "[t]he children did not have marks on them prior to [Defendant] coming home. They would mysteriously appear when [Ms. Mosher] would be out."

On the evening of 23 May 2010, Defendant was at home alone with Amy and Noah. At the time, Amy was two years old and Noah was three years old. Neither Amy nor Noah testified at trial; therefore, the evidence regarding the specific events giving rise to Defendant's convictions consisted entirely of Defendant's own testimony and testimony concerning the accounts he had provided to physicians and a social worker.

At approximately 7:00 p.m., Defendant began preparing a bath for Amy and Noah. Defendant turned on the water and placed the children into the bathtub. As the water was running and filling up the tub, Defendant heard his dog fighting outside and making a sound that Defendant described as "a vicious growl." Defendant testified that he left the children in the tub with the water running and went to check on the dog. He kicked another dog off of his dog, placed his dog's collar and chain back on, and returned to the bathroom. Defendant estimated that

he had left the children in the tub for what "felt like a minute." Immediately upon returning to the bathroom, Defendant saw Noah standing outside the tub. Amy was still in the tub, screaming and "splashing to get out." Defendant grabbed Amy out of the tub and saw that her legs were peeling. He reached to turn off the water and noticed that the cold water faucet was off. When he pulled out the drain plug, he discovered the bath water was "hot."

Amy was taken to the hospital and remained hospitalized until 12 July 2010. She sustained burns to approximately 44 percent of her body and underwent two surgeries to remove the burned skin and replace it with healthy tissue. Dr. Kenya McNeal-Trice ("Dr. McNeal-Trice"), a board-certified pediatrician and a member of Amy's treatment team at the North Carolina Children's Hospital, was tendered and accepted as an expert witness in the field of pediatrics and child abuse and neglect. She testified to a reasonable degree of medical certainty that Amy's injuries were consistent with an intentional — rather than accidental — burn and explained that the pattern of Amy's burn injuries was not consistent with the information Defendant had conveyed to her about how the injuries had occurred. Specifically, Dr. McNeal-Trice testified that

Amy's burns were "more consistent with being exposed for a period of time in a still position in hot water and not splashing to get out." She explained that if Amy had been standing and splashing to get out, the backs of her legs would not have remained unburned and instead Amy would have sustained a circumferential burn "all the way around her leg."

In addition, Dr. McNeal-Trice opined that the fact that Amy did not burn her hands, stomach, or torso was inconsistent with a child splashing to get out of scalding hot water. Dr. McNeal-Trice noted that there were "sharp water demarcation lines" on Amy's thighs, a potential indication that the burn was intentionally inflicted, and that Amy had petechial bruising on her sternum, which was likely caused by "some type of either pressure or force" being applied to her chest.

Defendant's expert witness, Dr. Allen Dimick ("Dr. Dimick"), was tendered and accepted as an expert in the fields of burn trauma care, burn surgery, and pre-hospital emergency care. He examined Amy's medical records, records from the investigation conducted by the Onslow County Sheriff's Office, and photographs of her burns and testified to a reasonable degree of medical certainty that Amy's burns "were completely accidental and not intentional." Dr. Dimick testified that in

his opinion, Amy likely suffered the second-degree "scald burns" on her back and buttocks from lying or falling back into the hot water and reacted to those burns by changing position to kneel on her knees, which resulted in the more severe burns to her thighs, legs, and the tops of her feet.

Dr. Dimick conceded, however, that he had "difficulty understanding" how Amy had sustained her particular burn injury pattern and that it was "hard to envision how that could occur" unless she had fallen backwards on her back into the water and then changed position to kneel on her knees. Dr. Dimick testified that he did not believe that Amy's injuries were consistent with someone "pushing her backward and holding her down," noting that the burns to her back were less severe, indicating a briefer exposure to the hot water. However, he did agree that Amy "certainly" could have sustained the burns to her back if she was pushed down into the water for a brief period of time.

On 18 January 2011, Defendant was indicted on two felony child abuse charges. The first charge alleged that Defendant had intentionally inflicted a serious bodily injury to Amy in violation of N.C. Gen. Stat. § 14-318.4(a3), and the second charge alleged that Defendant, by a willful act or grossly

negligent omission, showed a reckless disregard for human life which resulted in serious bodily injury to Amy in violation of N.C. Gen. Stat. § 14-318.4(a4).

A jury trial was held on 15 April 2013, and on 23 April 2013, the jury returned a verdict finding Defendant guilty of both offenses. The trial court consolidated the offenses and entered a judgment sentencing Defendant to a presumptive-range term of 58 to 79 months imprisonment. Defendant gave notice of appeal in open court.

## Analysis

Defendant contends that the trial court erred in entering judgment on both counts of felony child abuse — the intentional infliction of a serious bodily injury to a child in violation of N.C. Gen. Stat. § 14-318.4(a3) and the willful act or grossly negligent omission showing a reckless disregard for human life and resulting in a serious bodily injury to a child in violation of N.C. Gen. Stat. § 318.4(a4) — because the two offenses are mutually exclusive. We disagree. As explained below, we conclude that the evidence at trial permitted the jury to find both that (1) Defendant acted in reckless disregard for human life by initially leaving Amy and Noah unattended in a tub of

scalding hot water; and (2) after a period of time, Defendant returned to the tub and intentionally held Amy in that water.

Criminal offenses are mutually exclusive if "guilt of one necessarily excludes guilt of the other." *State v. Mumford*, 364 N.C. 394, 400, 699 S.E.2d 911, 915 (2010) (citation and quotation marks omitted). For example, our Supreme Court has held that a defendant may not be convicted of both embezzlement and obtaining property by false pretenses when the charges arise out of the same act or transaction, explaining that

> to constitute embezzlement, the property in question initially must be acquired lawfully, pursuant to a trust relationship, and then wrongfully converted. On the other hand, to constitute false pretenses the property must be acquired unlawfully at the outset, pursuant to a false representation. This Court has previously held that, since property cannot be obtained simultaneously pursuant to both lawful and unlawful means, guilt of either embezzlement or false pretenses necessarily excludes guilt of the other.

*State v. Speckman*, 326 N.C. 576, 578, 391 S.E.2d 165, 166-67 (1990) (internal citations omitted).

Here, Defendant was convicted of two counts of felony child abuse under two separate subsections of N.C. Gen. Stat. § 14-318.4. The first count, child abuse inflicting serious bodily injury in violation of § 14-318.4(a3), required the State to

prove that Defendant (1) is a parent or any other person providing care to or supervision of a child less than 16 years of age; and (2) intentionally inflicted any serious bodily injury to the child. *See* N.C. Gen. Stat. § 14-318.4(a3) (2013).[2]

Defendant's second count, child abuse by willful act or negligent omission showing a reckless disregard for human life resulting in serious bodily injury, required the State to establish that (1) Defendant is a parent or any other person providing care to or supervision of a child less than 16 years of age; (2) Defendant's willful act or negligent omission in the care of the child showed a reckless disregard for human life; and (3) the act or omission resulted in serious bodily injury to the child. *See* N.C. Gen. Stat. § 14-318.4(a4).

Defendant argues that the *mens rea* component of each offense makes the two crimes mutually exclusive because "[i]f one's conduct is intentional, as required to establish the offense defined in subsection (a3) of the statute, it is not any sort of negligence" and that "if one's conduct is any sort of

---

[2] The statute defines serious bodily injury as "[b]odily injury that creates a substantial risk of death or that causes serious permanent disfigurement, coma, a permanent or protracted condition that causes extreme pain, or permanent or protracted loss or impairment of the function of any bodily member or organ, or that results in prolonged hospitalization." N.C. Gen. Stat. § 14-318.4(d)(1).

negligence showing reckless disregard for human life, as required to establish the offense defined in subsection (a4) of the statute, it is not intentional." We conclude, however, that there was substantial evidence presented at trial permitting the jury to find that two separate offenses occurred in succession such that the two charges were not mutually exclusive.

We are guided by our decision in *State v. Johnson*, 208 N.C. App. 443, 702 S.E.2d 547 (2010), *disc. review denied*, ___ N.C. ___, 706 S.E.2d 247 (2011), which — although arising in a wholly different factual context than the present case — sheds light on the legal issue presented here. In *Johnson*, the defendant argued that the trial court erred by entering judgment on both his conviction for felony entering and his conviction for discharging a firearm into an occupied dwelling inflicting serious bodily injury because the two offenses were mutually exclusive. *Id.* at 448, 702 S.E.2d at 551. Specifically, he argued that the trial court should not have entered judgment against him for discharging a firearm *into* the victim's residence because his entry into the residence had already been accomplished at the time the shots were fired. *Id.*

We rejected this argument, holding that the facts of the case were sufficient to support a conclusion that the two crimes

were committed in succession and, as a result, the defendant's guilt of one offense did not exclude his guilt of the other. *Id.* at 449, 702 S.E.2d at 551. We explained that the evidence tended to show that the defendant and his coperpetrator, acting in concert, committed the entry when the coperpetrator inserted his hand into the partially-opened front door. He then removed his hand (and the firearm he was holding) from the interior of the residence and subsequently fired into the home through the door as evidenced by a bullet hole found in the door panel above the lock. *Id.* We concluded that these facts established that the two offenses occurred in succession and, therefore, were not mutually exclusive, finding merit in the State's contention that "[t]he mere fact that the shooter entered [the victim's] house at one point does not mean that the shooter was at all times thereafter inside [the victim's] house." *Id.*

Here, evidence was presented from which a reasonable juror could conclude that Defendant both (1) committed a willful act or negligent omission showing a reckless disregard for human life resulting in a serious bodily injury to Amy by leaving her unattended in a bathtub with the water on; *and* (2) intentionally inflicted a serious bodily injury to Amy thereafter by deliberately immersing her in scalding water.

Defendant, by his own admission, left Amy and Noah, who were two and three years old respectively, unattended in the bathtub while the water was running for what "felt like a minute." Defendant testified that he thought he turned on both the hot and cold water but that he could not be certain. Evidence was presented at trial that when the hot water is turned on in that bathtub, the water reaches 100 degrees Fahrenheit in 10 seconds, 115 degrees in 20 seconds, 119 degrees in 30 seconds, and 184 degrees in one minute. There was also testimony that an individual would sustain a third-degree burn from one second of exposure to 155-degree water, five seconds of exposure to 140-degree water, and 60 seconds of exposure to 127-degree water. We believe that from this evidence the jury could reasonably conclude that Defendant, by leaving the children alone in the tub, acted in a manner that showed a reckless disregard for human life, thereby constituting a violation of N.C. Gen. Stat. § 14-318.4(a4).

We also conclude that substantial evidence was presented supporting a finding of a *separate* act of intentional infliction of a serious bodily injury. The State put forth circumstantial evidence that Amy was intentionally immersed in scalding hot water by Defendant. Specifically, the State offered evidence

that (1) Amy had bruising on her chest, suggesting the application of pressure or force to that area of her body; and (2) the burns on her legs had sharp demarcation lines, indicating that she was forcibly held still while in the tub. This evidence was sufficient to support a conviction for intentionally inflicting serious bodily injury to Amy in violation of N.C. Gen. Stat. § 14-318.4(a3).

As such, the jury could have reasonably concluded that two separate, successive acts of felonious child abuse occurred — one causing a serious bodily injury through a reckless disregard for human life and one intentionally causing such an injury. A finding by the jury that Defendant acted in reckless disregard for human life by initially leaving Amy and Noah unattended in the tub did not preclude a separate finding that Defendant's conduct upon returning to the tub was intentional. Consequently, Defendant's argument is overruled, and the trial court's judgment is affirmed.

### Conclusion

For the reasons stated above, we affirm the trial court's entry of judgment on Defendant's felony child abuse convictions.

AFFIRMED.

Judges CALABRIA and STROUD concur.