TYSON, Judge.
 

 *79
 
 Jonathan Eugene Dixon ("Defendant") appeals from judgment entered upon a jury's conviction of child abuse intentionally inflicting serious bodily injury. The State presented insufficient evidence of Defendant's intentional infliction of serious bodily injury. We reverse and remand for re-sentencing on intentional child abuse inflicting serious physical injury.
 

 I. Background
 

 Defendant was indicted on one count of felony child abuse intentionally inflicting serious bodily injury on 10 February 2014. At trial, the State's evidence tended to show: Defendant lived in a house in Shelby, North Carolina, with his two daughters, ages four and six, his girlfriend Lee Webb, and her son and daughter. Lee's sister, Jennifer Webb, was also staying in the house.
 

 On 25 January 2014, the adults awoke after Defendant's oldest daughter, CW, had cut her little sister's hair. Defendant and Lee began to argue. Lee and Jennifer left the house with Lee's daughter, and went to a friend's home. Lee, Jennifer, and their friend went out around lunchtime. Prior to their return, Defendant rode his bicycle over to the friend's house, and stated he had fallen on CW and she was hurt.
 

 CW was transported to the emergency room at Cleveland Regional Hospital by ambulance just before 3:00 a.m. on 26 January 2014. Her leg had been stabilized in traction by EMS personnel. Defendant told one of
 
 *80
 
 the hospital's admitting nurses that he was trying to put CW back to bed about 2:30 a.m., but she was fighting him. Defendant stated CW kicked him, he tripped and fell on her, and he heard her leg "pop."
 

 The nurses noted CW's upper leg was misshaped, CW was very upset, crying, and clearly in pain, which increased with movement of the injured leg. The nurses also noted bruising around CW's nose, on her
 
 *707
 
 forehead and abdomen, and scrapes on her face.
 

 CW first stated she had run into a wall. She then she told the nurses she had woken up hungry because she had not eaten any food the day before. Defendant tried to put her back to bed, but she kicked him and he "pushed her legs together until her leg popped."
 

 Shelby Police Officer Josh Hendrick went to Cleveland Regional Hospital at 2:54 a.m. on 26 January 2014 to investigate the circumstances of CW's broken leg. Defendant stated he fell on top of CW and heard her leg pop. When questioned about CW's bruises, Defendant stated her head had wedged between the headboard and the mattress during the struggle.
 

 CW was transferred to Levine Children's Hospital ("Levine"). Dr. Bryant Allen was working that evening, and testified CW presented with a femur fracture in traction, and her pain was being managed by morphine. CW's medical chart indicated Defendant told doctors that during the struggle with CW, she had hit her head, he fell "backwards and forwards onto her leg," and he "felt a pop and looked down at her leg and it looked funny." CW had surgery on the same day she was admitted to Levine, to properly set the fracture and place titanium rods on either side of the bone to assist with proper healing. The titanium rods were removed once the bone had healed sufficiently, between June and September 2014.
 

 Dr. Allen described a femur fracture as an "incredibly painful experience" that requires "significant doses of pain medication and appropriate traction" to control the pain. Dr. Allen was concerned the injury was not accidental, as a great deal of force is required to break the femur. He testified that an accidental fall onto a child "is typically not enough force" to break the bone.
 

 Dr. Mark Mancuso, a pediatric radiologist at Levine, reviewed CW's x-rays, which were taken at her admission and over the course of her treatment. He described CW's fracture as a spiral fracture, which was unusual in a child of CW's age. He stated that most fractures of this type require a great deal of force and occur when a leg has been forcibly
 
 *81
 
 twisted. Dr. Mancuso testified it took between five to eight months for CW's leg to fully heal.
 

 Dr. Toni Tildon was CW's attending physician at Levine. Defendant told Dr. Tildon he had fallen on CW as he was pulling her out from under the headboard by her legs. CW also told Dr. Tildon that Defendant had fallen on her. Dr. Tildon testified femur fractures are incredibly painful, and the pain would continue as the bone healed for several weeks or months. Dr. Tildon testified CW would not suffer any permanent bone distortion, but would probably have life-long scars from her surgery.
 

 CW wore a cast on her leg for two or three weeks, and required the use of a wheelchair and a walker in the early stages of her recovery. CW did not return to kindergarten that year, and repeated that grade the next year. By September 2014, the rods had been removed and CW was cleared to engage in normal activities.
 

 At trial, three years after the incident occurred, CW testified she had kicked Defendant in the stomach, and he had pulled on her leg with one hand. CW stated she heard and felt her leg "pop" and then her leg hurt "a lot." At the time of trial, CW's scars had healed and she was engaging in unrestricted activities, such as playing basketball and soccer, and jumping on the trampoline.
 

 The defense presented no evidence. The trial court instructed the jury on both child abuse intentionally inflicting serious bodily injury under
 
 N.C. Gen. Stat. § 14-318.4
 
 (a3) and child abuse intentionally inflicting serious physical injury under
 
 N.C. Gen. Stat. § 14-318.4
 
 (a).
 

 On 23 March 2017, the jury returned a verdict and found Defendant guilty of child abuse intentionally inflicting serious bodily injury. The trial court entered judgment and sentenced Defendant to an active prison term of 125 to 162 months. Defendant entered notice of appeal in open court.
 

 II. Jurisdiction
 

 Jurisdiction lies with this court pursuant to N.C. Gen. Stat. §§ 7A-27(b) and 15A-1444(a) (2017).
 

 *708
 

 III. Issue
 

 Defendant's sole issue on appeal is whether the trial court erred in denying his motion to dismiss. Defendant argues the State presented insufficient evidence to submit the charge of child abuse intentionally inflicting serious bodily injury to the jury.
 

 *82
 

 IV. Serious Bodily Injury
 

 A. Standard of Review
 

 This Court reviews the denial of a motion to dismiss
 
 de novo
 
 .
 
 State v. Smith
 
 ,
 
 186 N.C.App. 57
 
 , 62,
 
 650 S.E.2d 29
 
 , 33 (2007). The State must present sufficient and substantial evidence of each essential element of the offense and that the defendant was the perpetrator of the offense.
 
 State v. Wilkins
 
 ,
 
 208 N.C.App. 729
 
 , 731,
 
 703 S.E.2d 807
 
 , 809 (2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."
 

 Id.
 

 (citation and quotation marks omitted). When ruling upon Defendant's motion to dismiss: "[t]he evidence must be viewed in the light most favorable to the State."
 
 State v. Wilson
 
 ,
 
 181 N.C.App. 540
 
 , 542,
 
 640 S.E.2d 403
 
 , 405 (2007) (citation omitted).
 

 B. Serious Bodily Injury v. Serious Physical Injury
 

 North Carolina classifies several offenses as felony child abuse under
 
 N.C. Gen. Stat. § 14-318.4
 
 (2017). Subsection (a) provides that
 

 [a] parent ... of a child less than 16 years of age who intentionally inflicts any serious physical injury upon or to the child or who intentionally commits an assault upon the child which results in any serious physical injury to the child is guilty of a Class D felony, except as otherwise provided in subsection (a3) of this section.
 

 N.C. Gen. Stat. § 14-318.4
 
 (a). "Serious physical injury" is defined in the statute as "[p]hysical injury that causes great pain and suffering."
 
 N.C. Gen. Stat. § 14-318.4
 
 (d)(2).
 

 Defendant was charged under subsection (a3):
 

 [a] parent ... of a child less than 16 years of age who intentionally inflicts any serious bodily injury to the child or who intentionally commits an assault upon the child which results in any serious bodily injury to the child ... is guilty of a Class B2 felony.
 

 N.C. Gen. Stat. § 14-318.4
 
 (a3). The statute defines "serious bodily injury" as "[b]odily injury that creates a substantial risk of death or that causes serious permanent disfigurement, coma, a permanent or protracted condition that causes extreme pain, or permanent or protracted loss or impairment of the function of any bodily member or organ, or that results in prolonged hospitalization."
 
 N.C. Gen. Stat. § 14-318.4
 
 (d)(1).
 

 *83
 
 Defendant had no prior convictions or record points. As a prior record level I, a class B2 felony has a presumptive sentencing range of 125 to 157 months, and Defendant was sentenced without aggravating or mitigating factors to 125 to 162 months. A Class D felony carries a presumptive sentencing range of 51 to 64 months, for an offender with no prior record.
 

 This differentiation and escalation of prison terms of the offenses is observed from the evolution of section 14-318.4. Prior to 1999, the statute did not include subsection (a3), and parents who "intentionally inflict[ed] any
 
 serious physical injury
 
 upon or to the child or who intentionally commit[ted] an assault upon the child which result[ed] in any
 
 serious physical injury
 
 to the child [were] guilty of a Class E felony."
 
 N.C. Gen. Stat. § 14-318.4
 
 (a) (1993) (emphasis supplied).
 

 In 1999, the North Carolina General Assembly proposed in House Bill 160 to increase the penalty for more egregious instances of child abuse.
 
 1999 N.C. Sess. Laws 451
 
 . The first version of the bill mandated a harsher penalty if the injury to the child was permanent. H.B. 160, Edition 1, Reg. Sess. (N.C. 2017) ("If a person commits an offense under subsection (a) of this section, and the serious physical injury is a permanent and debilitating injury, then the person is guilty of a Class C felony."). The final version contained the language codified in the current statute and punishes this offense as "a Class B2 felony."
 
 See
 

 N.C. Gen. Stat. § 14-318.4
 
 (a3), (d)(1) (2017).
 

 The case law since 1999 has attempted to differentiate between felony child abuse that results in "serious
 
 physical
 
 injury" and "serious
 
 bodily
 
 injury." In cases where the charge
 
 *709
 
 for child abuse inflicting "serious
 
 bodily
 
 injury" was upheld, the children tend to be very young, and present with injuries that would appear to be life-threatening, prolonged, or permanent.
 
 See, e.g.,
 

 State v. Chapman
 
 ,
 
 154 N.C.App. 441
 
 ,
 
 572 S.E.2d 243
 
 (2002) (two-year-old child, presented with blunt abdominal trauma which led to severe, life-threatening toxic shock due to perforated intestines );
 
 State
 

 v. Wilson
 
 ,
 
 181 N.C.App. 540
 
 ,
 
 640 S.E.2d 403
 
 (2007) (two-year-old child, presented with extensive burns along backside and a blood clot in the brain, which could result in life-long medical issues);
 
 State v. Parker
 
 ,
 
 185 N.C.App. 437
 
 ,
 
 651 S.E.2d 377
 
 (2007) (one-month-old child, presented with severe brain damage and extensive fractures, and who remained in a vegetative state at time of trial);
 
 State v. Mosher
 
 ,
 
 235 N.C.App. 513
 
 ,
 
 761 S.E.2d 204
 
 (2014) (two-year-old child, presented with burns over 44% of her body, which required hospitalization for two months).
 
 *84
 
 In contrast, the cases where a defendant was charged with felony child abuse inflicting "serious
 
 physical
 
 injury" tend to involve older children, with less permanent or life-threatening injuries.
 
 See, e.g.,
 

 State v. Williams
 
 ,
 
 154 N.C.App. 176
 
 ,
 
 571 S.E.2d 619
 
 (2002) (eight-year-old child, struck on buttocks with a board, which resulted in a large bruise and open wound and required twelve to fourteen days to recover);
 
 State v. Lowe
 
 ,
 
 154 N.C.App. 607
 
 ,
 
 572 S.E.2d 850
 
 (2002) (nine-year-old child, struck on the head with a pool stick);
 
 State v. Williams
 
 ,
 
 184 N.C.App. 351
 
 ,
 
 646 S.E.2d 613
 
 (2007) (nine-year-old child, beaten with a belt for extended period of time, which resulted in extensive bruising, swelling, and pain for over a week).
 

 This Court's analysis in
 
 State v. Bohannon
 
 , --- N.C.App. ----,
 
 786 S.E.2d 781
 
 (2016), further illuminates the distinction between child abuse inflicting or resulting in "serious
 
 physical
 
 injury" and "serious
 
 bodily
 
 injury." The three-month-old child was brought to the emergency room and presented with significant bruising from his face to his chest.
 

 Id.
 

 at ----,
 
 786 S.E.2d at 784
 
 . Diagnostic scans revealed the child had "buckle fractures" to both of his tibias, which, according to expert medical testimony, are often caused by significant twisting of the bones.
 

 Id.
 

 The scans also revealed hemorrhaging in the brain.
 

 Id.
 

 The child was admitted to the hospital for orthopedic surgery and general observation, and remained hospitalized for two days.
 

 Id.
 

 The defendant in
 
 Bohannon
 
 was initially charged and indicted with three counts of felony child abuse inflicting "serious
 
 physical
 
 injury" for the bruising, fractured legs, and the brain hematoma. The State subsequently charged him with felony child abuse inflicting "serious
 
 bodily
 
 injury" for the resulting brain hemorrhaging.
 

 Id.
 

 at ----,
 
 786 S.E.2d at 785
 
 . The jury returned verdicts finding the defendant guilty of two counts of felony child abuse inflicting serious physical injury, for the broken tibias and the bruising, and one count of felony child abuse inflicting serious bodily injury for the brain hemorrhage.
 

 Id.
 

 The defendant appealed the trial court's denial of his motion to dismiss the charge of serious bodily injury for insufficient evidence.
 

 Id.
 

 The defendant argued that since the child did not suffer acute consequences as a result of the brain hemorrhage, the "brain injury never presented a substantial risk of death."
 

 Id.
 

 at ----,
 
 786 S.E.2d at 786
 
 . This Court recognized no case law defines "serious bodily injury" or "substantial risk of death" in the cases involving felony child abuse, but found "the age and particular vulnerability of a minor victim must factor into this analysis."
 

 Id.
 

 *85
 
 Although the child did not have immediate life-threatening consequences upon his admission to the hospital, he would have to be monitored for dangerous side effects from the brain hemorrhage that may appear down the road.
 

 Id.
 

 at ----.
 
 786 S.E.2d at 787
 
 . Because the bleeding in the brain had the potential to be life-threatening, based on uncontroverted expert medical testimony, and that risk of death was created when the child suffered the brain injury, this Court held there was sufficient evidence of serious bodily injury to send the charge to the jury.
 

 Id.
 

 These comparative case interpretations of the statute show the legislative intent for adding subsection (a3) as "a Class B2 felony" was to substantially increase punishment for the more egregious instances of child abuse. All child abuse is abhorrent. However, the history and intent of the statute
 
 *710
 
 as amended shows the charge of intentionally inflicting "serious
 
 bodily
 
 injury" is reserved for those more egregious cases where a child suffers "permanent or protracted" injuries or is placed at "substantial risk of death."
 
 N.C. Gen. Stat. § 14-318.4
 
 (d)(1).
 

 C. Sufficiency of the Evidence
 

 The State argues sufficient evidence was presented of Defendant intentionally inflicting serious bodily injury on CW to justify submitting that charge to the jury. The State asserts the evidence shows CW suffered disfigurement, extreme pain, and loss of the use of a limb for a protracted period of time. The State argues the cases of
 
 State v. Downs
 
 and
 
 State v. Williams
 
 support its assertion that CW suffered disfigurement due to the scars that remain from the surgery to place and remove the titanium rods in her leg.
 

 In
 
 State v. Downs,
 
 this Court determined the permanent loss of a tooth in an assault qualified as "permanent disfigurement" to support sending a charge of serious bodily injury to the jury.
 
 179 N.C.App. 860
 
 , 861-62,
 
 635 S.E.2d 518
 
 , 520 (2006). In
 
 State v. Williams
 
 , this Court found a scar over the victim's eye that resulted from an assault and subsequent lingering infection "amount[ed] to permanent disfigurement."
 
 201 N.C.App. 161
 
 , 169,
 
 689 S.E.2d 412
 
 , 416 (2009).
 

 This Court has more recently held that "the presence of a minor scar or other mild disfigurement alone cannot be sufficient to support a finding of serious bodily injury."
 
 State v. Williams
 
 , --- N.C.App. ----, ----,
 
 804 S.E.2d 570
 
 , 579 (2017) (citation and internal quotation marks omitted). We reject the State's assertion that the presence of a scar is a bright-line indication to support a charge of serious bodily injury.
 

 Id.
 

 *86
 
 In this case, CW's scars result from surgery. By the time of trial, CW's surgical scars had healed and she was engaged in unrestricted physical activities. The appearance of faded surgical scars on the leg should tend to be less disfiguring than a scar resulting from blunt impact to the face and compounded by a lingering infection.
 
 See
 

 Williams
 
 ,
 
 201 N.C.App. at 169
 
 ,
 
 689 S.E.2d at 416
 
 .
 

 CW testified her scars were already fading. Further, the State's expert physician testified there should be no permanent disfiguration, or any loss or impairment of function of the leg due to the scars. Under these facts, the scars on CW's leg are not sufficient evidence of permanent disfigurement to elevate Defendant's child abuse to intentionally inflicting serious bodily injury.
 
 See
 

 Williams
 
 , --- N.C.App. at ----,
 
 804 S.E.2d at 579
 
 .
 

 The State also asserts CW suffered extreme pain and loss of use of her leg for a period of time, which supports sending the charge of serious bodily injury to the jury. However, the State offers no support for these assertions. As stated in the statute, to be considered "serious bodily injury," it is not enough for the victim to suffer extreme pain, but rather "a permanent or protracted condition that causes extreme pain."
 
 N.C. Gen. Stat. § 14-318.4
 
 (d)(1).
 

 Child abuse inflicting "serious physical injury" is "[p]hysical injury that causes great pain and suffering."
 
 N.C. Gen. Stat. § 14-318.4
 
 (d)(2). CW testified her leg had stopped hurting long before trial. CW was cleared to engage in normal activities within nine months of her injury.
 

 Unlike in
 
 Bohannon
 
 , where the injury
 
 created
 
 "a substantial risk of death," the injuries to CW did not
 
 cause
 
 "serious permanent disfigurement, coma, a permanent or protracted condition that causes extreme pain, or permanent or protracted loss or impairment of the function of any bodily member or organ," or
 
 result
 
 "in prolonged hospitalization."
 
 N.C. Gen. Stat. § 14-318.4
 
 (d)(1) ;
 
 see
 

 Bohannon
 
 , --- N.C.App. at ----,
 
 786 S.E.2d at 781
 
 . As no testimony or other evidence was presented that CW was ever at risk of death due to her injury, the outcome of her injury is determinative of whether she suffered a "serious bodily injury."
 

 Relying upon the established precedents of felony child abuse in the cases above, the State presented insufficient evidence to submit the charge of felony child abuse inflicting serious bodily injury to the jury. However, the evidence submitted in the light most favorable to the State was sufficient to submit and support a conviction of intentional
 
 *711
 
 child abuse resulting in serious physical injury.
 
 *87
 

 V. Conclusion
 

 Defendant does not dispute he inflicted physical injury upon his child. He does not argue the injury was unintentional. He disputes the severity of the injury to support a conviction for felony child abuse intentionally inflicting serious bodily injury. Other than as discussed above, this Court has refused to create a bright-line differentiation between "serious
 
 physical
 
 injury" and "serious
 
 bodily
 
 injury" as it pertains to felony child abuse and instead it reviews cases on a fact-specific basis.
 

 Comparing the facts of this case to others sustaining felony child abuse intentionally inflicting serious bodily injury, the evidence presented does not sustain the heightened charge. The State did not present sufficient evidence to overcome Defendant's motion to dismiss. Defendant's sentence of felony child abuse intentionally inflicting serious bodily injury is reversed.
 

 The State presented sufficient evidence to support a conviction of felony child abuse inflicting serious physical injury. We remand this matter to the trial court for re-sentencing on the lesser offense of felony child abuse inflicting serious physical injury.
 
 It is so ordered.
 

 REVERSED AND REMANDED FOR RE-SENTENCING.
 

 Chief Judge McGEE and Judge DAVIS concur.