STATE OF NORTH CAROLINA v. DONNIE E. CHAPMAN

No. COA02-302

(Filed 3 December 2002)

### 1. Child Abuse and Neglect— defendant as perpetrator—sufficiency of evidence

The State presented evidence in a felonious child abuse inflicting serious bodily injury prosecution sufficient for the jury to infer that defendant was the individual who intentionally abused the child where the evidence tended to show that defendant provided exclusive care to the child while the child's mother was at work; the child was injured during the time he was in defendant's care; and the injuries resulted in the removal of part of the child's pancreas, a perforation in his small intestine, blood clots, severe shock, injury to his bladder and kidneys, and a contusion to his liver.

### 2. Child Abuse and Neglect— mere presence—instruction not given

There was no prejudicial error in the trial court's failure to instruct on mere presence in a prosecution for felonious child abuse where the court instructed on the State's burden of proving defendant's identity as the perpetrator of the crime, circumstantial evidence, accident, and misdemeanor child abuse.

### 3. Evidence— another's guilt—emotion not shown at hospital—exclusion not prejudicial

There was no prejudicial error in a felonious child abuse prosecution where defendant was denied an answer to a question as to whether the child's mother had shown emotion at the hospital. Defendant was allowed to solicit other evidence that the mother was the perpetrator and there was no reasonable possibility that the outcome would have been different if the question had been answered.

Appeal by defendant from judgment entered 19 September 2001 by Judge Russell J. Lanier, Jr. in Onslow County Superior Court. Heard in the Court of Appeals 14 November 2002.

STATE v. CHAPMAN

[154 N.C. App. 441 (2002)]

*Attorney General Roy Cooper, by Assistant Attorney General Brenda Eaddy, for the State.*

*Hosford & Hosford, P.L.L.C., by Sofie W. Hosford, for defendant.*

TYSON, Judge.

On 19 September 2001, a jury convicted Donnie E. Chapman ("defendant") of felony child abuse resulting in serious bodily injury. He was sentenced to a term of 27 months to 42 months. Defendant appeals. We find no prejudicial error.

## I. Background

On Saturday, 11 December 1999, defendant was living with Victoria Dekan ("Ms. Dekan"), her son, Tyrone Mason ("Tyrone"), who was almost two years old, and their daughter, Alexis, who was approximately one year old, in Jacksonville, North Carolina. At 3:00 a.m., Ms. Dekan left home to go to work. The children remained in the care of defendant. Defendant noticed that Tyrone was not feeling well during breakfast later that morning on 11 December. Around noon, defendant called Ms. Dekan, told her that Tyrone was ill and asked her to return home. When she arrived, defendant and Ms. Dekan took a shower together. Defendant went to the store to buy juice for the children while Ms. Dekan continued to dress. Defendant and Ms. Dekan took Tyrone to the emergency room at the Naval Hospital at Camp Lejeune at approximately 3:00 p.m.

Samuel Tuluri, M.D., a staff pediatrician at the Naval Hospital, testified that he examined Tyrone. He described Tyrone as "a sick-looking two year old child, very ill, very shocky." He also noticed that Tyrone's abdomen was "distended" or protruding. Dr. Tuluri testified that he diagnosed that Tyrone was suffering from "a blunt abdominal trauma" and that the medical history was inconsistent with the symptoms of shock he observed. The hospital staff experienced difficulties in placing an I.V. into Tyrone, so Dr. Tuluri inserted a needle into Tyrone's bone to administer fluids. Dr. Tuluri determined that Tyrone needed "a higher level of care, pediatric intensive care" than the Naval Hospital could provide. Tyrone was transferred to Pitt County Memorial Hospital.

Earlier in the week, Tyrone had been kept at home from daycare because he was sick and needed to receive vaccination shots. Defendant cared for Tyrone during this time. Tyrone returned to daycare on Thursday and Friday. His teachers testified that Tyrone

appeared normal and was feeling well on Friday, December 10th, when he was picked up from daycare by defendant.

Tracey Brown, an investigative social worker with Onslow County Department of Social Services ("DSS"), was called to Pitt County Memorial Hospital on 13 December to investigate an allegation of child abuse of Tyrone. Ms. Brown interviewed defendant, who admitted being a caretaker for Tyrone. On the evening of 10 December, defendant and Ms. Dekan had a guest visit in the house. Defendant informed Ms. Brown that from 3:00 a.m., when Ms. Dekan left for work, until she returned home sometime after noon on 11 December, defendant was the only adult with Tyrone. Defendant and Ms. Dekan were both charged with felonious child abuse inflicting serious bodily injury and tried separately.

Dorothy Mattocks, a social worker with DSS, testified that she worked in the foster care unit and attempted to place Tyrone in the best care available for him. She testified that she observed Tyrone during a visitation with his family. Tyrone interacted with his mother, his mother's siblings and a grandmother, but cried and would not interact with defendant. She testified that Tyrone was "very bonded" and "clingy towards his mom" but that he "didn't acknowledge the defendant no more than crying when the mom tried to coax him toward the defendant." After being released from the hospital, Tyrone was placed in the custody of his biological father.

Rebecca Coker, M.D., an expert in pediatrics, works at the Teddy Bear Center, a program for "the evaluation of children in whom there's a suspicion of non-accidental trauma or other types of abuse and neglect." Dr. Coker testified that Tyrone was a patient in the pediatric intensive care unit because of severe shock. The shock was life threatening and resulted from a perforation in the intestine which caused free air to be released into the abdomen. Tyrone also suffered a fracture of the pancreas that resulted in the removal of part of the pancreas, blood clots, contusions on the liver, and bladder or kidney injury noted by blood in the urine. Dr. Coker testified that in her medical opinion, the injuries to Tyrone were caused by trauma. She also testified, "[t]he only other injury like this that I've seen have been [sic] with severe motor vehicle accidents and none that involve this many organs in the abdomen. The pediatric surgeon also had never seen this number of injuries even from a single motor vehicle accident to the abdomen to this number of organs. And, and in intentional child abuse. Those are the only other types I've seen."

The defendant did not offer any evidence. The jury found defendant guilty of felonious child abuse while inflicting serious bodily injury.

## II. Issues

Defendant contends the trial court erred by (1) denying defendant's motion to dismiss for insufficiency of evidence, (2) denying defendant's request for instruction on "mere presence", and (3) preventing defendant from eliciting testimony on cross-examination regarding a witness' observation of the victim's mother.

## III. Motion to dismiss

**[1]** A motion to dismiss is properly denied when there is substantial evidence of (1) each element of the offense charged and (2) that the defendant is the perpetrator of the crime. *State v. Davis,* 130 N.C. App. 675, 678, 505 S.E.2d 138, 141 (1998). "Substantial evidence is evidence from which a rational finder of fact could find the fact to be proved beyond a reasonable doubt." *Id.* (citing *State v. Vause,* 328 N.C. 231, 236, 400 S.E.2d 57, 61 (1991)). "When ruling on a motion to dismiss, all of the evidence should be considered in the light most favorable to the State, and the State is entitled to all reasonable inferences which may be drawn from the evidence." *Id.* at 679, 505 S.E.2d at 141 (citing *State v. Mitchell,* 109 N.C. App. 222, 224, 426 S.E.2d 443, 444 (1993)).

To survive a motion to dismiss for felonious child abuse inflicting serious bodily injury, the State must present substantial evidence that the defendant is a "parent or any other person providing care to or supervision of a child less than 16 years of age" and that the defendant "intentionally inflict[ed] any serious bodily injury to the child or who intentionally commit[ed] an assault upon the child which result[ed] in any serious bodily injury to the child, or which result[ed] in permanent or protracted loss or impairment of any mental or emotional function of the child." N.C. Gen. Stat. § 14-318.4(a3) (2001); *State v. Krider,* 145 N.C. App. 711, 713, 550 S.E.2d 861, 862 (2001), *appeal dismissed,* 355 N.C. 219, 560 S.E.2d 150 (2002). " 'Serious bodily injury' is defined as bodily injury that creates a substantial risk of death, or that causes serious permanent disfigurement, coma, a permanent or protracted condition that causes extreme pain, or permanent or protracted loss or impairment of the function of any bodily member or organ, or that results in prolonged hospitalization." N.C. Gen. Stat. § 14-318.4(a3). "In felonious

child abuse cases, the State is not required to prove that the defendant ' "specifically intend[ed] that the injury be serious." ' Moreover, felonious child abuse 'does not require the State to prove any specific intent on the part of the accused.' " *Krider*, 145 N.C. App. at 713, 550 S.E.2d at 862 (quoting *State v. Pierce*, 346 N.C. 471, 494, 488 S.E.2d 576, 589 (1997) (quoting *State v. Campbell*, 316 N.C. 168, 172, 340 S.E.2d 474, 476 (1986))).

Defendant contends the State presented insufficient evidence that defendant assaulted Tyrone or that he intended to inflict injury to Tyrone. "In determining the presence or absence of intent, the jury may consider the acts and conduct of the defendant and the general circumstances existing at the time of the alleged commission of the offense charged." *State v. Riggsbee*, 72 N.C. App. 167, 171, 323 S.E.2d 502, 505 (1984).

The State presented substantial evidence that defendant provided exclusive adult care to Tyrone, age two years, during the time Tyrone's mother was at work. Defendant admitted to Ms. Ramos of DSS that he and Ms. Dekan were together with the children for a while that night. Defendant was alone with Tyrone that night when Ms. Dekan took her bath. Ms. Dekan left for work at 3:00 a.m. on 11 December and the children remained alone with defendant until Ms. Dekan's return after noon that day. Defendant and Ms. Dekan had a guest at their house on the evening of 10 December. Defendant stated that neither their guest nor Ms. Dekan had injured Tyrone.

The State also presented evidence that Tyrone was injured during the time period of 12 to 24 hours prior to his surgery on 11 December at approximately 11:00 p.m. This evidence tended to show that Tyrone was injured between 11:00 p.m. on 10 December and 11:00 a.m. on 11 December. Workers at Tyrone's daycare testified that Tyrone seemed fine during the day of 10 December until he was picked up by defendant. Tyrone's injuries resulted in the removal of part of his pancreas, a perforation in his small intestine, blood clots, severe shock, injury to his bladder or kidneys, and contusion to his liver.

Defendant informed Ms. Dekan around noon on 11 December that Tyrone was sick and requested her to come home from work. When Ms. Dekan returned home, defendant and Ms. Dekan took a shower together. While Ms. Dekan dressed, defendant went shopping for juice for the children. Around 3:00 p.m., defendant and Ms. Dekan took Tyrone to the emergency room. Dr. Coker testified that the injuries to Tyrone were of such a nature that they could

not have been self-inflicted. Dr. Coker had only previously seen injuries of that nature in car wreck victims and victims of intentional child abuse.

The State presented substantial evidence for the jury to infer that defendant was the individual who intentionally abused Tyrone. This assignment of error is overruled.

### IV. "Mere Presence" Instruction

[2] Defendant contends that the failure to give an instruction on "mere presence" is grounds for a new trial. We disagree.

Defendant requested the following instruction:

A person is not guilty of a crime merely because he is present at the scene; to be guilty he must aid or actively encourage the person committing the crime or in some way communicate to this person his intention to assist in its commission.

The State objected on the grounds that the proposed instruction was only proper where there was evidence of defendant aiding and abetting or acting in concert. No evidence of aiding and abetting or acting in concert was offered and, the trial court denied defendant's request for the proposed instruction.

Defendant's proposed instruction is based upon language from *State v. Lemmons*, 348 N.C. 335, 354, 501 S.E.2d 309, 321 (1998) and *State v. Goode,* 350 N.C. 247, 260, 512 S.E.2d 414, 422 (1999). Both *Goode* and *Lemmon* dealt with instructions regarding aiding and abetting. *Lemmons,* 348 N.C. at 354, 501 S.E.2d at 321; *Goode,* 350 N.C. at 260, 512 S.E.2d at 422. The trial court correctly found that there was no evidence of aiding and abetting or acting in concert in the present case. "A charge is to be construed contextually as a whole. Isolated errors will not be held prejudicial when the charge as a whole is correct." *State v. Chambers,* 52 N.C. App. 713, 721, 280 S.E.2d 175, 180 (1981) (citing *State v. Bailey,* 280 N.C. 264, 185 S.E.2d 683, *cert. denied,* 409 U.S. 948, 34 L. Ed. 2d 218 (1972)).

The trial court did instruct on the State's burden of proving defendant's identity as the perpetrator of the crime, circumstantial evidence, accident, and the lesser included offense of misdemeanor child abuse. We find that the trial court's instructions, taken as a whole, were correct. There was no prejudicial error in denying the instruction on mere presence. This assignment of error is overruled.

## V. Cross-examination Testimony

[3] Defendant contends the trial court erred in preventing him from cross-examining Ms. Brown regarding her observations of the demeanor of Ms. Dekan at the hospital. Defendant asked Ms. Brown: "[W]hen you went to speak to Ms. Dekan, did you—isn't it true that you believed she did not show signs of emotion?" The State made a general objection and the trial court sustained the objection without stating its reasoning.

Although defendant was denied the opportunity to obtain an answer to his question, he did solicit other evidence to suggest that Ms. Dekan was the perpetrator of the intentional abuse of Tyrone and that Ms. Brown was concerned for the safety of Tyrone while he was in the presence of Ms. Dekan for the jury to consider. A defendant is not entitled to a new trial unless there is a reasonable possibility that a different result would have been reached absent the challenged testimony. N.C. Gen. Stat. § 15A-1443(a).

We find no reasonable possibility that the outcome would have been different if the trial court had allowed Ms. Brown to answer the question in light of similar evidence introduced for the jury to consider. The trial court did not commit prejudicial error in sustaining the State's objection. This assignment of error is overruled.

## VI. Conclusion

The trial court did not err in denying defendant's motions to dismiss for insufficient evidence. There was no prejudicial error in denying defendant's request for jury instructions on mere presence or in sustaining the State's objection to defendant's question to Ms. Brown during cross-examination.

No prejudicial error.

Judges WALKER and McCULLOUGH concur.