IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-415

Filed 18 April 2023

Haywood County, Nos. 14CRS051293, 14CRS000736, 14CRS000738-39, 17CRS000494, & 14CRS001097-98

STATE OF NORTH CAROLINA

v.

CHRIS ALLISON DEMICK, Defendant.

Appeal by Defendant from Judgments entered 3 November 2017 by Judge Marvin P. Pope, Jr., in Haywood County Superior Court. Heard in the Court of Appeals 7 February 2023.

> *Attorney General Joshua H. Stein, by Assistant Attorney General Catherine R. Laney, for the State.*

> *Office of the Appellate Defender, by Assistant Appellate Defender Michele A. Goldman and Appellate Defender Glenn Gerding, for Defendant-Appellant.*

RIGGS, Judge.

Defendant Chris Allison Demick appeals from several criminal judgments entered after a jury convicted him of multiple felony and misdemeanor child abuse offenses. On appeal, Mr. Demick contends the trial court: (1) erred in sentencing him based on aggravating factors that were necessary elements of the underlying crimes; (2) erred in sentencing him at higher statutory felony classifications that went into effect during the period alleged in the indictment absent a special verdict establishing

the date of the offenses; (3) erred in denying his motion to dismiss a charge of intentional child abuse inflicting serious bodily injury ("ICAISBI"); (4) plainly erred in its verdict sheet on ICAISBI and in failing to submit intentional child abuse inflicting serious physical injury ("ICAISPI") as a lesser-included offense of ICAISBI; (5) plainly erred in failing to submit misdemeanor child abuse to the jury as a lesser included offense on four counts of ICAISPI; (6) plainly erred in failing to give a jury instruction on lawful corporal punishment; and (7) may have erred in withholding juvenile delinquency records of one of the victims. Finally, Mr. Demick presents an eighth, alternative argument that errors (1) through (6) collectively establish ineffective assistance of counsel ("IAC"). After careful review, we hold that: (1) Mr. Demick is entitled to resentencing without consideration of the aggravating factor found by the jury and at the lesser felony classifications; (2) the record is otherwise free of reversible error; and (3) this panel is unable to resolve Mr. Demick's IAC claim on the cold record. For these reasons, we remand the matter for resentencing only and dismiss Mr. Demick's IAC claim without prejudice to filing a motion for appropriate relief ("MAR") with the trial court.

## I.  FACTUAL AND PROCEDURAL HISTORY

Mr. Demick began residing with his future spouse and her several children in 2009. Over time, the family grew to two adults and seven children as a result of changes in the children's custody arrangements. The family moved several times, transitioning from a camper to a singlewide trailer before eventually settling into a

three-bedroom doublewide mobile home near a junkyard in Bethel, North Carolina.

One of the children, M.B. ("Margot"), was eight years old when Mr. Demick moved in. She was tasked with numerous chores around the home; beginning at 4 a.m. every morning, Margot had to feed the 17 dogs and more than 60 cats that lived on the property, take them for walks, and wash all the clothes and dishes for the family in the bathtub due to the absence of a kitchen sink. Margot's chores kept her up very late at night, interfering with her sleep. When she did sleep, she was consigned to a spot on the floor of the mobile home. She attended elementary school but was otherwise generally prohibited from going outside.

On one December 2010 afternoon, Margot returned home from school after getting in trouble for teasing other children. Margot's mother began hitting her with a switch as punishment when Mr. Demick approached with a wooden paddle. Mr. Demick took Margot to a trailer at the junkyard, had her pull down her pants, and struck her with the paddle on her backside. This was the first time Mr. Demick ever hit Margot.

Mr. Demick beat Margot on an almost daily basis over the following four years, and she was kept home from school on several occasions due to her visible bruises. In one such instance, Mr. Demick struck Margot in the face with a belt, causing her eye to bruise and swell; Margot was not permitted to go to school while the injury was visible and experienced permanent partial vision loss as a result of the injury. On another occasion, Mr. Demick beat Margot with a paddle until she lost consciousness;

she awoke to a one-inch laceration on the back of her head that required pediatric medical treatment and several staples to close. Margot was permitted to return to school with this injury but was restricted from participating in extracurricular activities. Beyond the beatings, Mr. Demick also made Margot eat mealworms, grub worms, and crickets as "punishments." Mr. Demick also forced cat feces in Margot's mouth after waking her up at 3 a.m., purportedly for falling asleep while doing the dishes and allowing a cat to relieve itself in the bathtub.

The daily paddlings generally followed a standard pattern. Mr. Demick would use the same paddle and strike Margot on her legs and backside repeatedly. The beatings usually took place inside their home, and Mr. Demick would hit Margot with her pants up or down depending on his degree of anger. He would strike her hard enough to shake the entire home, sometimes laughing at her when she would squirm or grow nauseous from the pain. The beatings left severe bruising and bleeding sores on Margot's legs and buttocks that interfered with her ability to walk and kept her home from school. Mr. Demick would hit Margot for the slightest reason, including showing emotion at home.

Mr. Demick was also alleged to have physically abused Margot in other ways.[1] In lieu of paddling her, Mr. Demick would grab, pinch, and twist the skin on Margot's stomach, causing it to bruise, bleed, and scab over. These wounds eventually left

---

[1] Mr. Demick was charged with and tried for one act of sexual abuse against Margot, and the jury acquitted him of this offense. As a result, we omit discussion of those allegations from this opinion.

scars on Margot's stomach. Mr. Demick would tell Margot not to tell anyone about the beatings and threatened to kill her if she did; he also instructed her to lie about her injuries when receiving medical treatment. The pinching and paddling continued through late 2013 and early 2014, leaving scars and bruises. Margot recorded the following school absences over the years of abuse: 20 in 2009-2010; 12 in 2010-2011; 24 in 2011-2012; 22 in 2012-2013; and 20 in 2013-2014.[2]

Other children in the household received physical beatings as well. In January 2011, Mr. Demick beat 12-year-old S.D. ("Scott")[3] for the first time for yelling at a sibling. Mr. Demick flew into a furious rage, bent Scott over a trunk, and shouted and hit him for 20 to 25 minutes across his hips, back, and thighs with a stick Mr. Demick called a "Mother of Rose." The beating left a black and purple bruise, six-to-eight inches wide, on Scott's right hip. The area was bruised and sore for two weeks, and left Scott unable to fully participate in physical education class.

In a second instance, in 2012, Mr. Demick was angry with Scott for getting into a fight at school and neglecting some of his chores. Mr. Demick took Scott to the primary bedroom and hit him across the back and knees 115 times—until Mr. Demick was winded with exhaustion—with a wooden axe handle. Mr. Demick grew increasingly angry as the beating continued, turning from silently furious to outright

---

[2] As relevant background, 15 absences was considered excessive by the local school system.

[3] Though of majority age at the time of trial, we refer to S.D. by pseudonym to protect his privacy as a minor victim.

cursing over the course of 30 to 40 minutes. Scott's legs were left black and blue for two weeks, while his hips and legs hurt severely for about a week. Mr. Demick beat Scott on other occasions, though they did not rise to the severity of the two events described above.

Scott eventually built up the courage to report Mr. Demick's abuse to his school principal on 4 March 2014. By the time Scott returned home that day, law enforcement had arrived at the home and the local Department of Social Services had begun arranging alternative care placements for Margot and Scott. Scott and Margot never returned to Mr. Demick's custody.

Margot started receiving medical care from Dr. Sarah Monahan-Estes, a pediatric hospitalist and child abuse pediatrician with Mission Hospital. Dr. Monahan-Estes observed small permanent scars on Margot's stomach and "extensive scarring on [Margot's] butt and the back of her legs" as a result of Mr. Demick's paddlings. She would later describe Margot's injuries with the following trial testimony:

> [Margot] actually had pieces of her butt missing. . . . [S]he was actually missing pieces of her fat and her muscle that had been so significantly damaged that it was permanently gone. So she actually had two rather large holes in—one on each side of her butt where she had what we call necrosis, which means that tissue had died and was never going to come back.
>
> . . . .
>
> . . . [S]he had part of her muscle and fat just gone, just

wasn't present.

. . . .

. . . [Y]ou can see these little hyperpigmented scars. Hyperpigmented is a very fancy word for saying dark. So she had these dark scars on her abdomen, and she said those were from where she had been pinched and that it had actually caused her to bleed.

. . . .

. . . [Y]ou can see . . . the di[vo]t or the hole that is in both sides.

. . . .

. . . [S]he still has all of these large sort of di[vo]ts or scarring on her butt and on her lower leg. . . . [T]hat is actually a hole. So she is actually permanently missing a piece of her buttocks that will never be back.

So she—again, just sort of permanently disfigured on this side.

The abuse also left Margot with a below-average height and weight due to an endocrinological condition called "psychological dwarfism," which inhibited her physical growth and development until she left Mr. Demick's care and the mistreatment ceased.

Mr. Demick was indicted on 7 July 2014 for: (1) one count each of assault inflicting serious bodily injury, ICAISBI, and assault with a deadly weapon inflicting serious injury for the injuries to Margot's buttocks and legs; (2) one count each of assault with a deadly weapon inflicting serious injury and ICAISPI for the injuries to Margot's scalp; (3) one count of ICAISPI for the injuries to Margot's stomach; (4) one

count of misdemeanor child abuse for forcing Margot to ingest cat feces; and (5) two counts of ICAISPI for the injuries to Scott.

The State obtained superseding and new indictments on 12 June 2017 for the following offenses: (1) one count of ICAISBI for the injuries to Margot's buttocks; (2) one count each of ICAISPI for the injuries to Margot's stomach, head, and eye; and (3) one count of rape of a child for the alleged sexual abuse of Margot. The State later dismissed the two assault with a deadly weapon charges and the initial ICAISBI charge as duplicative. In its dismissal, the State noted that the ICAISBI offense charged by superseding indictment would be "a class C or B2 felony (depending on a factual finding of the date of offense because the punishment changed during the alleged date range)."

The trial court ordered production of Margot's "mental health, counseling and juvenile records" to conduct an *in camera* review for any impeachment, exculpatory, or otherwise relevant evidence. The trial court reviewed the materials and ordered them sealed without disclosure to Mr. Demick, finding that they contain "no evidence which would impeach the credibility of the witness or in any way bear[] any relevance to the alleged dates of offense."

Mr. Demick's trial began on 30 October 2017. Margot, Scott, and Dr. Monahan-Estes testified consistent with the above recitation of the facts, as did several social workers and school employees. Mr. Demick moved to dismiss all charges at the close

of both the State's and Mr. Demick's evidence. The trial court denied the motions both times.

The jury was instructed on each charge and given the verdict sheets, which generally asked the jury to make a finding of guilt or innocence "as to the allegation of Mr. Demick [committing the alleged crime.]" However, the verdict sheet for the ICAISBI charge deviated from the other charges by asking the jury to find the following:

As to the allegation of [Mr. Demick] inflicting permanent scarring to the buttocks and/or legs of [Margot], we the jury unanimously return as our verdict that [Mr. Demick] is:

> 1. _____ **GUILTY of Felonious Child Abuse Inflicting Serious Bodily Injury; <u>OR</u>**
>
> 2. _____ NOT GUILTY.

The jury found Mr. Demick guilty on all counts except rape. The jury also found that Mr. Demick took advantage of a position of trust or confidence as an aggravating factor as to each guilty verdict. The trial court sentenced Mr. Demick to a total of 400 to 550 months' imprisonment based on six consecutive aggravated sentences. This included sentencing Mr. Demick on one count each of ICAISBI and ICAISPI at the higher classification levels. Written judgements were entered 3 November 2017, and Mr. Demick filed a written notice of appeal on 9 November 2017.

## II.   <u>ANALYSIS</u>

Mr. Demick identifies eight different issues on appeal under different standards of review. We first address Mr. Demick's meritorious sentencing arguments before reaching his remaining prejudicial and plain error claims. Finally, we dismiss his IAC claim without prejudice to filing an MAR with the trial court.

## A. The Trial Court Impermissibly Considered the Aggravating Factor Found by the Jury

Mr. Demick first argues that the trial court erred in sentencing him in the aggravated range based on the aggravating factor that he "took advantage of a position of trust or confidence, including a domestic relationship." He rightly notes that "[e]vidence necessary to prove an element of the offense shall not be used to prove any factor in aggravation," N.C. Gen. Stat. § 15A-1340.16(d) (2021), and both misdemeanor and felony child abuse require showing the defendant is a "parent . . . or . . . other person providing care to or supervision of [a] child," N.C. Gen. Stat. §§ 14-318.2 & -318.4 (2021). Thus, "the trust or confidence factor" may not "be used to aggravate a sentence for felony child abuse." *State v. Darby*, 102 N.C. App. 297, 299, 401 S.E.2d 791, 792 (1991) (citation omitted). The State concedes error in this regard and agrees with Mr. Demick that every conviction must be remanded for resentencing without consideration of the trust or confidence factor found by the jury. *See id.* at 301, 401 S.E.2d at 793. Consistent with Mr. Demick's argument, the State's concessions, and the binding statutory and caselaw, we order just such relief.

## B. The Ambiguous Verdict Requires Resentencing at Lower Felony Classifications on Remand

- 10 -

The indictments for the ICAISPI and ICAISBI offenses against Margot in file nos. 14CRS000736 and 14CRS051293 alleged the crimes occurred between January 2009 and March 2014. Effective 1 December 2013, the General Assembly changed the felony classification for each crime: ICAISPI was elevated from Class E to Class D, while ICAISBI was elevated from Class C to Class B2. 2013 N.C. Sess. Laws 98, 98-99, ch. 35 § 1. At trial, Margot testified that the pinchings (ICAISPI) and paddlings (ICAISBI) occurred both before and after these reclassifications. No special verdict form was presented to the jury requiring a determination of a date or date range of the offenses; therefore, the jury made no specific finding as to the date of the offenses, and the trial court sentenced Mr. Demick at the higher felony levels.

Mr. Demick argues that the jury's verdict was ambiguous for sentencing purposes and, on *de novo* review, must be construed in his favor as occurring under the earlier, lower sentencing regime. *See, e.g., State v. Mosley*, 256 N.C. App. 148, 153, 806 S.E.2d 365, 368-69 (2017) (holding, on *de novo* review, that a second-degree murder verdict was ambiguous as to malice—which elevates second-degree murder to a Class B1 felony—and must be construed in the defendant's favor as a Class B2 second-degree murder conviction). The State disagrees, arguing the issue is controlled by *State v. Poston*, which held that a sentence at the higher classification as between two potentially applicable sentencing statutes is proper so long as it is supported by the evidence introduced at trial and sentencing. 162 N.C. App. 642, 650-51, 591 S.E.2d 898, 904 (2004). We address the parties' dispute despite requiring

resentencing under Mr. Demick's first argument "because it may recur on remand." *State v. Poore*, 172 N.C. App 839, 842, 616 S.E.2d 639, 641 (2005).

Whether the circumstances presented here falls within cases like *Mosley* or *Poston* appears to be a matter of first impression; we have not found, and the parties have not provided, a published case resolving whether a general verdict is rendered ambiguous by evidence showing the completed offense may have been committed on either temporal side of a statutory reclassification of the crime.[4] As explained below, we hold that the general verdict is ambiguous under these circumstances and a defendant, absent a determination by the jury by special verdict form as to the specific date of or date range of offense sufficient to determine which sentencing regime is applicable, must be sentenced under whichever statutory classification is lower.

### 1. *Ambiguous Verdicts Generally*

Our caselaw has generally addressed ambiguous verdicts in two contexts. The first—and more serious—category involves *fatal* ambiguities that call into question the unanimity of the verdict such that a defendant's constitutional rights are violated. For example, "a disjunctive instruction, which allows the jury to find a defendant

---

[4] In an unpublished decision, this Court did consider a defendant's "nuanced argument that where the date of an offense is uncertain, and the evidence shows it may have fallen under more than one sentencing regime, the trial court should sentence the defendant under the most lenient regime." *State v. Amore*, 275 N.C. App. 980, 852 S.E.2d 738, 2020 WL 7974419, at *3 (unpublished). We ultimately did not need to squarely resolve the question because "the factual basis for the [guilty] plea in this case showed [the offense occurred] *well before* the new sentencing regime took effect. Therefore, there was not *ambiguity as to the dates of the offenses* . . . . The trial court had a sufficient factual basis to sentence [the] [d]efendant under the [harsher] 2008 regime." *Id.* (second emphasis added).

guilty if he commits either of two underlying acts, *either of which is in itself a separate offense*, is fatally ambiguous because it is impossible to determine whether the jury unanimously found that the defendant committed one particular offense." *State v. Lyons*, 330 N.C. 298, 302-03, 412 S.E.2d 308, 312 (1991).

This same kind of infirmity does not arise, however, when a general verdict is rendered on evidence supporting multiple theories of the same offense. *State v. Hartness*, 326 N.C. 561, 564-65, 391 S.E.2d 177, 179 (1990). For example, and as explained by our Supreme Court in the context of indecent liberties:

> The risk of a nonunanimous verdict does not arise in cases such as the one at bar because the statute proscribing indecent liberties does not list, as elements of the offense, discrete criminal activities in the disjunctive . . . . [The statute] proscribes simply "any immoral, improper, or indecent liberties." Even if we assume that some jurors found that one type of sexual conduct occurred and others found that another transpired, the fact remains that the jury as a whole would unanimously find that there occurred sexual conduct within the ambit of "any immoral, improper, or indecent liberties." Such a finding would be sufficient to establish the first element of the crime charged.

*Id.* at 564-65, 391 S.E.2d at 179. Such general verdicts—even if nonspecific as to the theories upon which each juror found the defendant guilty of all elements of the crime—are thus not fatally ambiguous on unanimity grounds. *Lyons*, 330 N.C. at 302-03, 412 S.E.2d at 312. After all, "[c]riminal defendants are not convicted or acquitted of theories; they are convicted or acquitted of crimes." *State v. Thomas*, 325 N.C. 583, 593, 386 S.E.2d 555, 561 (1989).

While a general verdict does not require a jury, as a constitutional unanimity matter, to specifically identify which of several alternative alleged acts or theories satisfy the elements of the crime charged, such verdicts may nonetheless be ambiguous *for sentencing purposes only* if the different acts or theories change the classification of the offense. *Cf. State v. Sargeant*, 206 N.C. App. 1, 10, 696 S.E.2d 786, 793 (2010), ("[A] jury's specification of its theory does not constitute a conviction of a crime, *but is for purposes of sentencing proceedings*." (emphasis added)), *aff'd as modified*, 365 N.C. 58, 707 S.E.2d 192 (2011). This Court has frequently addressed this issue in the context of second-degree murder: the crime requires the State to prove malice, but different theories of malice result in different felony classifications. N.C. Gen. Stat. § 14-17(b) (2021). Thus, "a general verdict would be ambiguous *for sentencing purposes* where the jury is charged on second-degree murder and presented with evidence that may allow them to find that either B2 depraved-heart malice or another B1 malice theory existed." *State v. Lail*, 251 N.C. App. 463, 475, 795 S.E.2d 401, 411 (2016) (emphasis added). When a general verdict is sufficient to support a unanimous conviction but ambiguous for sentencing purposes, "neither we nor the trial court is free to speculate as to the basis of a jury's verdict, and the verdict should be construed in favor of the defendant." *Mosley*, 256 N.C. App. at 153, 806 S.E.2d at 369 (citations omitted). Trial courts may avoid the issue altogether by requiring a special verdict that resolves any sentencing ambiguity in the first instance. *See Lail*, 251 N.C. App. at 476, 795 S.E.2d at 411 (noting in the context of

second-degree murder that "where a general verdict would be ambiguous for sentencing purposes, trial courts should frame a special verdict requiring the jury to specify under which available malice theory it found the defendant guilty" (citations omitted)).

### 2. *The Verdict Is Ambiguous for Sentencing Purposes*

We hold that the verdicts in this case present the same ambiguity discussed in *Mosley* and *Lail*, albeit under different facts. As in those cases, there is no question that the jury unanimously found Mr. Demick committed all elements of the two felony child abuse crimes alleged in file nos. 14CRS000736 and 14CRS051293. This case therefore does not raise any constitutional unanimity concerns, *Hartness*, 326 N.C. at 564-65, 391 S.E.2d at 179, and Mr. Demick raises none on appeal. However, there was evidence presented at trial establishing that the offenses charged in those indictments occurred before and/or after the statutory reclassifications. Because "trial courts are limited to whatever punishment the jury's verdict authorizes," *State v. Norris*, 360 N.C. 507, 516, 630 S.E.2d 915, 921 (2006), and the verdicts fail to resolve which classifications apply by omitting the operative dates or range of dates of offense, the jury's verdicts are ambiguous for sentencing purposes. Further, because an ambiguous verdict is "construed in favor of a defendant[,] [as] [t]his Court is not free to speculate as to the basis of a jury's verdict," *State v. Whittington*, 318 N.C. 114, 123, 347 S.E.2d 403, 408 (1986) (citation omitted), we are compelled to resolve this ambiguity in favor of Mr. Demick.

In reaching this holding, we distinguish the principal cases relied upon by the State, *Poston* and *State v. Lawrence*, 193 N.C. App. 220, 667 S.E.2d 262 (2008). The defendant in *Poston* did not challenge the verdict as ambiguous for sentencing purposes; instead, the defendant argued that the adoption of the Structured Sentencing Act during the timeframe alleged in the indictment "rendered the date of the offense *material*" to the commission of the crime. 162 N.C. App. at 650, 591 S.E.2d at 904 (emphasis added).[5] Nor could the defendant have successfully argued any ambiguity in that case—as we went on to explain, the evidence introduced at trial was insufficient to show that the offense in question occurred at any time other than before the Structured Sentencing Act's effective date. *Poston*, 164 N.C. App. at 651, 591 S.E.2d at 904. We ultimately held that the trial court erred in sentencing the defendant under the Fair Sentencing Act because all the evidence showed the offenses occurred after the Structured Sentencing Act went into effect. *Id*. Both of the above dissimilarities from the instant case are present in *Lawrence*, which likewise did not present an ambiguity argument and only involved evidence establishing guilt on one side of the statutory reclassification. 193 N.C. App. at 224-25, 667 S.E.2d at 265.

In sum, sentencing Mr. Demick at the higher classifications would require the

---

[5] This is an important distinction; failure to prove a material fact requires setting aside a conviction rather than merely remanding for resentencing. *See, e.g., State v. Whittemore*, 255 N.C. 583, 593, 122 S.E.2d 396, 403-04 (1961) (holding the trial court prejudicially erred in instructing the jury it could convict defendants for conduct occurring after the dates alleged in the indictment when defendants' presented alibis and thus made "the time charged in the bill . . . material").

trial court and this Court to speculate as to which dates the jury "used to support its conviction[s]." *Lail*, 251 N.C. App. at 475, 795 S.E.2d at 411. *Cf. Mosley*, 256 N.C. App. at 153, 806 S.E.2d at 369 ("Because there was evidence presented which would have supported a verdict on second degree murder on more than one theory of malice, and because those theories support different levels of punishment . . . , the verdict rendered in this cause was ambiguous."). We are prohibited from undertaking such an exercise and must instead instruct the trial court to address these offenses under the lower classifications on resentencing. *Mosley*, 256 N.C. App. at 153, 806 S.E.2d at 369. We therefore direct the trial court to resentence Mr. Demick on remand under the lower Class E for ICAISPI in file no. 14CRS000736 and Class C for ICAISBI in file no. 14CRS051293.

## C. Mr. Demick's Motion to Dismiss

Mr. Demick next asserts that the trial court erred in denying his motion to dismiss the ICAISBI charge involving Margot, claiming there was insufficient evidence to support a finding that the injuries she suffered amounted to "serious bodily injury" as defined by N.C. Gen. Stat. § 14-318.4(d)(1) (2021). Per that statute, "serious bodily injury" is:

> Bodily injury that creates a substantial risk of death or that causes serious permanent disfigurement, coma, a permanent or protracted condition that causes extreme pain, or permanent or protracted loss or impairment of the function of any bodily member or organ, or that results in prolonged hospitalization.

*Id.* Mr. Demick asserts that because Margot's injuries were limited to scarring that is easily concealed by clothing, they could not amount to "serious bodily injury." We disagree.

### 1. *Standard of Review*

Trial court rulings on motions to dismiss are reviewed *de novo*. *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007). A motion to dismiss requires the court to discern "whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied." *State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d 451, 455 (2000) (citations omitted). We answer these questions taking the evidence "in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." *State v. Rose*, 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994) (citation omitted). Said evidence is substantial if it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Smith*, 186 N.C. App. at 62, 650 S.E.2d at 33 (citation and quotation marks omitted).

### 2. *The Motion to Dismiss Was Properly Denied*

In arguing that Margot's injuries did not amount to "serious bodily injury," Mr. Demick minimizes Margot's injuries to simple, minor scarring that, as a matter of law, does not constitute "serious bodily injury" under our precedents. *See State v. Williams*, 255 N.C. App. 168, 182, 804 S.E.2d 570, 579 (2017) ("[T]he presence of a

*Opinion of the Court*

minor scar or other mild disfigurement alone cannot be sufficient to support a finding of 'serious bodily injury.'" (citation omitted)); *State v. Dixon*, 258 N.C. App. 78, 85, 811 S.E.2d 705, 710 (2018) (applying this rule to ICAISBI specifically). In *Williams*, we held that a visible scar that did not permanently impact the victim's health or otherwise physically impair him was insufficient evidence to survive a motion to dismiss a charge of assault on a law enforcement officer inflicting serious bodily injury. 255 N.C. App. at 182-83, 804 S.E.2d at 579. Similarly, in *Dixon*, we held that an ICAISBI charge should not have gone to the jury where the scars at issue: (1) were caused by surgery on the victim's leg rather than the injury itself; (2) had healed without any lasting restrictions on the victim's physical activities; (3) were fading; and (4) did not result in "permanent disfiguration, or any loss or impairment of function of the leg," according to expert physician testimony. 258 N.C. App. at 86, 811 S.E.2d at 710.[6] These cases collectively establish that a small, purely aesthetic scar, with no other lasting physical impact on the victim, does not amount to a "serious bodily injury," as it is not a "*serious* permanent disfigurement, . . . a permanent or protracted condition that causes extreme pain, or [a] permanent or

---

[6] *Dixon* also involved a femur fracture that was successfully treated with surgery and, while extremely painful for some time, did not result in any permanent pain or ill-effects beyond the small surgery scar. *Id.* at 81, 811 S.E.2d at 707. Because there was no evidence that the femur fracture resulted in any permanent injury or pain, we held that it was insufficient evidence to support the ICAISBI charge. *Id.* at 86, 811 S.E.2d at 710. For the same reasons explained *infra*, Margot's injuries are distinguishable from the femur break discussed in *Dixon* in that they are large, permanent, and resulted in the irrevocable loss of fat and muscle tissue.

protracted loss or impairment of the function of any bodily member or organ." N.C. Gen. Stat. § 14-318.4(d)(1) (emphasis added).

The above cases are meaningfully distinct from the one before us, however. Critically, "[w]hether a 'serious bodily injury' has occurred . . . depends upon the facts of each case[.]" *Williams*, 255 N.C. App. at 179, 804 S.E.2d at 577 (quoting *State v. Williams*, 150 N.C. App. 497, 502, 563 S.E.2d 616, 619 (2002)). This case includes substantial distinguishing facts, namely that Margot suffered from necrosis *in addition to* the scarring, leaving her with permanent "holes" and "di[vo]ts" on her backside caused by the permanent and irrevocable loss of muscle and fat tissue. Dr. Monahan-Estes testified that Margot "was actually *missing pieces of her fat and her muscle* that had been so *significantly damaged that it was permanently gone*. So she actually had two *rather large* holes . . . on each side of her butt where she had what we call necrosis, which means that tissue had died and was *never going to come back*." (Emphasis added). She repeatedly noted that these "holes" were "large," and left Margot "permanently disfigured." Beyond the permanent loss of muscle and other tissue, the scars themselves were still causing Margot pain two months after leaving Mr. Demick's custody. The scars were likewise the result of beatings that left open, bleeding sores on Margot's legs for years, and which substantially interfered with her attendance at school. All of this distinguishing evidence establishes that the injuries to Margot were not purely aesthetic; rather, their substantial size and permanency, alongside their long-term pain and accompanying irreversible loss of underlying

muscle and fat tissue due to necrosis, all suffice to show "serious bodily injury" in the form of "serious permanent disfigurement" and "a . . . protracted condition that causes extreme pain" as described in the statute. N.C. Gen. Stat. § 14-318.4(d)(1).

Other cases demonstrate this distinction equally well. For example, in *State v. Fields*, 265 N.C. App. 69, 827 S.E.2d 120 (2019), *aff'd as modified*, 374 N.C. 629, 843 S.E.2d 186 (2020), we held that "a significant, jagged scar" on the victim's genitals was sufficient at the motion to dismiss stage to "support a finding of 'serious permanent disfigurement.'" 265 N.C. App. at 73, 827 S.E.2d at 123. We reached a similar conclusion in *State v. Downs*, 179 N.C. App. 860, 635 S.E.2d 518 (2006), holding that evidence of a permanently lost tooth was sufficient to send an assault inflicting serious bodily injury charge to the jury:

> Defendant's assault caused [the victim] to forever lose a natural tooth, and therefore "marred and spoiled" his appearance. Notwithstanding the prospect of a dental implant, the fact remains that [the victim] suffered the permanent loss of his own live, natural tooth. Because there is substantial record evidence of a serious permanent disfigurement, the assignment of error is overruled.

179 N.C. App. at 862, 635 S.E.2d at 520. In both cases, and contrary to Mr. Demick's argument here, the fact that the genital and dental injuries could be concealed by clothing or an implant had no bearing on whether the large genital scar or lost tooth amounted to serious bodily injuries. And while it is true that we have held "serious bodily injury" in the specific context of ICAISBI offenses is intended to apply to "those more egregious cases where a child suffers permanent or protracted injuries or is

- 21 -

placed at substantial risk of death," *Dixon*, 258 N.C. App. at 85, 811 S.E.2d at 709-10 (citation and quotation marks omitted), the evidence in this case unequivocally establishes Margot's injuries as "permanent or protracted."[7] We therefore hold that the trial court did not err in denying Mr. Demick's motion to dismiss the ICAISBI charge.

## D. ICAISBI Verdict Sheet and Absence of ICAISPI Lesser-Included Instruction

Mr. Demick next assigns plain error to the verdict sheet for ICAISBI and the failure of the trial court to submit ICAISPI as a lesser-included offense of that charge to the jury. We hold that Mr. Demick has not shown plain error in either respect.

### 1. Standard of Review

Under the plain error standard of review, "a defendant must demonstrate that a fundamental error occurred at trial." *State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012). To establish the requisite prejudice, a defendant must show that, "after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty." *Id.* (citations and quotation marks

---

[7] Mr. Demick cites several child abuse cases for the proposition that Margot's injuries are more equivalent to some lesser degree of injury. *See generally State v. Williams*, 184 N.C. App. 351, 646 S.E.2d 613 (2007) (holding a single hour-and-45-minute beating with a belt on the victim's backside that left scarring but no permanent injury amounted to ICAISPI); *State v. Williams*, 154 N.C. App. 176, 571 S.E.2d 619 (2002) (beating daughter on buttocks with a board multiple times resulting in temporary bleeding, a large bruise, limping, and the mere possibility of scarring amounted to misdemeanor assault); *State v. Varner*, 252 N.C. App. 226, 796 S.E.2d 834 (2017) (striking the victim with a paddle resulting in a large bruise and a few days of pain and limping amounted to misdemeanor child abuse). All of these cases are distinguishable on their facts for the same reasons set forth above.

omitted). The standard "is to be applied cautiously and only in the exceptional case, [and] the error will often be one that seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (cleaned up) (citation and quotation marks omitted).

### 2. *ICAISBI Verdict Sheet*

The trial court submitted the ICAISBI offense to the jury through the following verdict sheet:

As to the allegation of [Mr. Demick] inflicting permanent scarring to the buttocks and/or legs of [Margot], we the jury unanimously return as our verdict that [Mr. Demick] is:

1. _____ **GUILTY of Felonious Child Abuse Inflicting Serious Bodily Injury; OR**

2. _____ NOT GUILTY.

Mr. Demick argues plain error under the theory that, "[b]y framing the allegation as whether Mr. Demick inflicted permanent scarring, the jury did not have to consider whether that injury met the definition of serious bodily injury." Mr. Demick's argument fails, as the indictment, verdict sheet, and instructions collectively tasked the jury with making this finding in order to find Mr. Demick guilty, and his conclusory assertion that "the jury probably would have reached a different result" if given a different verdict sheet is insufficient to demonstrate the requisite prejudice.

When analyzing a verdict sheet for error, the form itself should be analyzed together with the indictments and the actual instructions given to the jury, as the verdict sheet "is intended to aid the trial court in avoiding the taking of verdicts which

are flawed by the inadvertent omission of some essential element of the verdict itself *when given orally*." *State v. Sanderson*, 62 N.C. App. 520, 524, 302 S.E.2d 899, 902 (1983) (citation omitted) (emphasis added). Thus, where the indictments and instructions are proper, there is no error in the verdict sheet if it "sufficiently identified the offenses found by the jury to enable the court to pass judgment on the verdict and sentence defendant appropriately." *Id.*

The ICAISBI indictment in this case clearly set forth all elements of the crime charged, and the trial court properly instructed the jury that it could only convict Mr. Demick of the offense if it found that the injuries to Margot's legs and backside rose to the level of serious bodily injury after defining the term consistent with the law:

> For you to find the defendant guilty of this offense, the State must prove three things beyond a reasonable doubt.
>
> . . . .
>
> And third, that the defendant without justification or excuse *intentionally inflicted a serious bodily injury* to the child, and/or intentionally assaulted the child which proximately resulted in serious bodily injury to the child. *A serious bodily injury is defined as a bodily injury that creates a substantial risk of death or that causes serious permanent disfigurement, coma, a permanent or protracted condition that causes extreme pain, or permanent or protracted loss or impairment of the function of any bodily member or organ, or that results in prolonged hospitalization.*
>
> If you find from the evidence beyond a reasonable doubt that on or about the alleged date the defendant . . . intentionally inflicted a serious bodily injury to the child, and/or intentionally assaulted the child which

> proximately resulted in serious bodily injury to the child, it would be your duty to return a verdict of guilty. *If you do not so find or have a reasonable doubt as to one or more of these things, it would be your duty to return a verdict of not guilty.*

(Emphasis added). Nothing else appearing, "[w]e assume the jury followed the court's instructions," *State v. Best*, 342 N.C. 502, 516, 467 S.E.2d 45, 54 (1996), and it is clear from the indictment and evidence that the ICAISBI charge involved the injuries to Margot's legs and buttocks. In claiming that the jury would probably have reached a different result "had [it] been correctly instructed that it must determine whether the buttocks scars met the definition of serious bodily injury," Mr. Demick overlooks that the trial court did just that. Mr. Demick cannot show plain error because "the verdict can be properly understood by reference to the indictment, evidence and jury instructions." *State v. Connard*, 81 N.C. App. 327, 336, 344 S.E.2d 568, 574 (1986) (citations omitted).

We distinguish our holding from *State v. Floyd*, where we held that there was error—albeit non-prejudicial—in verdict sheets that allowed the jury to find a defendant guilty of attaining violent habitual felon status on a finding of a single recent underlying felony rather than the requisite two prior violent felony convictions. 148 N.C. App. 290, 296, 558 S.E.2d 237, 241 (2002). There, the verdict sheets themselves allowed for a conviction on facts that were inadequate to establish the crime. *Id.* The verdict sheet here, however, is different; as explained above, and consistent with the indictments, evidence, and instructions, Mr. Demick *could* be

found guilty of ICAISBI for the injuries inflicted on Margot's legs and backside if the jury determined they rose to the level of serious bodily injury. And, as in *Floyd*, Mr. Demick has not shown the requisite prejudice—that the jury *probably* would have reached a different result, *State v. Juarez*, 369 N.C. 351, 358, 794 S.E.2d 293, 300 (2016)—given the extensive and uncontradicted photographic and testimonial evidence detailing the severity of Margot's injuries.

### 3. *ICAISPI Instruction as a Lesser-Included Offense*

The trial court did not submit ICAISPI as a lesser-included offense of ICAISBI to the jury, an omission Mr. Demick asserts also amounts to plain error. Assuming, *arguendo*, that this was error, we hold that Mr. Demick cannot show the requisite prejudice because the substantial and uncontradicted evidence in the record concerning Margot's injuries does not suggest it "probable, not just possible, that absent the instructional error the jury would have returned a different verdict." *Id.* (citation omitted).

In the present case, and as explained *supra*, the State's evidence established that Margot's injuries rose to the level of "serious bodily injury." None of this evidence as to severity was contradicted; while Mr. Demick's counsel cross-examined Margot, his questioning focused on disproving the sexual assault allegation and suggesting that something other than Mr. Demick's acts caused her injuries. Further, Margot's testimony was corroborated for the jury through photographs and additional testimony from other witnesses. Having established the existence of every element

of the greater crime, and without contradicting evidence that Margot's injuries were collectively anything less than "a serious permanent disfigurement" or "a permanent or protracted condition that cause[d] extreme pain," N.C. Gen. Stat. § 14-318.4(d)(1), we do not believe it *probable* that the jury would have convicted Mr. Demick of ICAISPI had it been given a lesser-included instruction.

### E. Absence of Lesser-Included Offense Instruction on Misdemeanor Child Abuse

Mr. Demick next asserts that the trial court committed plain error in failing to instruct the jury on misdemeanor child abuse as a lesser-included offense of ICAISPI. The State offers no counterargument on the merits but asserts instead that misdemeanor child abuse is not a lesser-included offense under our precedents. We disagree with the State, but ultimately hold that Mr. Demick has not shown sufficient prejudice to establish plain error.

#### 1. *Misdemeanor Child Abuse Is a Lesser-Included Offense of ICAISPI*

Generally, "the test [to determine if a crime is a lesser-included offense] is whether the essential elements of the lesser crime are essential elements of the greater crime." *State v. Nickerson*, 365 N.C. 279, 282, 715 S.E.2d 845, 847 (2011). Both parties agree that misdemeanor child abuse would ordinarily be a lesser-included offense of ICAISPI based on this test. But N.C. Gen. Stat. § 14-318.2(b) (2021) provides that misdemeanor child abuse is "an offense additional to other civil and criminal provisions and is not intended to repeal or preclude any other sanctions

or remedies." The State relies on this language to assert that misdemeanor child abuse cannot be considered a lesser-included offense of ICAISPI despite our trial and appellate courts' repeated treatment of the crime as such. *See, e.g., State v. Phillips*, 328 N.C. 1, 19-20, 399 S.E.2d 293, 302 (1991) (holding no instruction on misdemeanor child abuse was warranted during trial for felony child abuse because the instruction was unsupported by the evidence); *State v. Chapman*, 154 N.C. App. 441, 446, 572 S.E.2d 243, 247 (2002) (observing on appeal from an ICAISPI conviction that "[t]he trial court did instruct on the State's burden of proving defendant's identity as the perpetrator of the crime, circumstantial evidence, accident, and the lesser included offense of misdemeanor child abuse. We find that the trial court's instructions, taken as a whole, were correct.").

As the State rightly notes, this Court has stated that N.C. Gen. Stat. § 14-318.2(b) exempts misdemeanor child abuse from consideration as a lesser-included offense of other crimes, but only in *dicta* or in an unpublished decision. *See State v. Mapp*, 45 N.C. App. 574, 585, 264 S.E.2d 348, 356 (1980) (noting that "[t]he General Assembly apparently did not intend child abuse to be a lesser included offense or to merge with any other offense" before holding that double jeopardy did not require misdemeanor child abuse be merged with second-degree murder); *State v. Martin*, 268 N.C. App. 153, 833 S.E.2d 263, 2019 WL 5219970, at *4 (unpublished) (relying on *Mapp* for this proposition). Neither *Mapp* nor *Martin* is binding. *See Kanipe v. Lane Upholstery*, 151 N.C. App. 478, 485, 566 S.E.2d 167, 171 (2002) ("[M]ere

*dicta* . . . [is] not binding on this Court."); *Long v. Harris*, 137 N.C. App. 461, 470, 528 S.E.2d 633, 639 (2000) ("An unpublished opinion establishes no precedent and is not binding authority." (cleaned up) (citations and quotation marks omitted)).

Unlike in *Mapp* and *Martin*, this Court did directly address the question of whether misdemeanor child abuse under N.C. Gen. Stat. § 14-318.2 is a lesser-included offense of ICAISPI in a published decision in *State v. Young*, 67 N.C. App. 139, 312 S.E.2d 665 (1984), *overruled on separate grounds by State v. Campbell*, 316 N.C. 168, 340 S.E.2d 474 (1986). There, in determining whether the trial court erred in denying the defendant's request to submit misdemeanor child abuse as a lesser-included offense of felony child abuse, we reviewed "[t]he parts of [N.C. Gen. Stat. §] 14-318.4 that are pertinent to this case" before expressly holding that misdemeanor child abuse is a lesser-included offense under the statute. *Id.* at 141-42, 312 S.E.2d at 668. Misdemeanor child abuse has since been treated and analyzed as a lesser-included offense of ICAISPI at every level of the judiciary since *Young*. *See Phillips*, 328 N.C. at 19-20, 399 S.E.2d at 302; *State v. Plemmons*, 149 N.C. App. 974, 563 S.E.2d 99, 2002 WL 553811, at *4 (2002) (unpublished) (holding the trial court did not err in instructing on misdemeanor child abuse as a lesser-included offense of felony child abuse where instruction on the lesser-included offense was warranted by the evidence).

We are bound by *Young* because its holding as to misdemeanor child abuse as a lesser-included offense has not been overruled; neither *Mapp*'s earlier *dicta* nor

*Martin*'s unpublished decision to the contrary are binding, and we are not free to disregard binding precedent even in an unpublished opinion. *See In re Civil Penalty*, 324 N.C. 373, 378, 384, 379 S.E.2d 30, 33, 37 (1989) (recognizing that *dicta* is not binding before holding that "a panel of the Court of Appeals is bound by a prior decision of another panel of the same court addressing the same question, but in a different case, unless overturned by an intervening decision from a higher court").

### 2. *Mr. Demick Cannot Show Prejudice*

Mr. Demick argues that the trial court plainly erred in failing to give misdemeanor child abuse instructions for the ICAISPI charges related to: (1) Margot's head injury; (2) Margot's stomach scars; and (3) both of Scott's beatings. As to each, he asserts that the evidence was equivocal on whether those injuries were "serious physical injuries" or simply "physical injuries." The former is defined as "[p]hysical injury that causes great pain and suffering. The term includes serious mental injury." N.C. Gen. Stat. § 14-318.4(d)(2) (2021). Factors establishing "whether an injury is serious . . . include, but are not limited to: hospitalization, pain, loss of blood, and time lost from work." *State v. Romero*, 164 N.C. App. 169, 172, 595 S.E.2d 208, 210 (2004) (citation omitted).

These arguments fail for the same reasons as Mr. Demick's earlier plain error claims. Here, Margot testified that her head injury: (1) was incurred during a beating that was so painful she "blacked out;" (2) included bleeding from an inch-long incision on the back of her head; (3) necessitated medical treatment and staples to close; and

(4) caused her to miss extracurricular activities. Margot further testified that her stomach injuries bled, caused her "lots of pain about all the time," scarred, and that her visible injuries would cause her to be kept home from school. The scarring and bleeding caused by the stomach wounds was further corroborated by Dr. Monahan-Estes and photographic evidence. Mr. Demick's counsel did not cross-examine Margot on the severity of these injuries, and instead elicited testimony suggesting Mr. Demick did not cause the head wound. And while Dr. Monahan-Estes testified on cross-examination that Margot's bruises and scars had faded in months after removal from Mr. Demick's custody, that evidence does not substantially undercut both the immediate and lasting severity of the pain incurred over the years of abuse testified to by Margot.

Scott likewise testified that his first beating: (1) "hurt greatly," to the point he could not think of anything else; (2) caused bruising for several weeks; and (3) left him unable to run or participate fully in physical education classes. As for his second beating, Scott told the jury that: (1) his "legs were black and blue [for two weeks], and my hips hurt severely for the next week or so[;]" and (2) it hurt so much that it was "mind-numbing" and he couldn't "think about anything besides it happening." He further testified that the injuries left scars. Again, Mr. Demick did not elicit any evidence on cross-examination that brought the severity of the injuries into question. Because the State's evidence showed that each incident caused "serious physical injury," and Mr. Demick failed to introduce any conflicting evidence as to severity, we

do not believe it probable that the jury would have reached a different result had it received instruction on misdemeanor child abuse as a lesser-included offense.

## F. Corporal Punishment Instruction

Mr. Demick also asserts plain error in the trial court's failure to give an instruction on lawful corporal punishment for two counts of ICAISPI involving Scott. Again assuming error, we hold that Mr. Demick cannot show the requisite prejudice amounting to plain error.

Parents have a constitutional right to raise their children as they see fit, including, in this State, using corporal punishment within certain limits. Thus, "as a general rule, a parent (or one acting *in loco parentis*) is *not* criminally liable for inflicting physical injury on a child in the course of lawfully administering corporal punishment." *Varner*, 252 N.C. App. at 228, 796 S.E.2d at 836 (citation omitted). As for the rule's limitations, it does not apply:

> (1) where the parent administers punishment which may seriously endanger life, limb or health, or shall disfigure the child, or cause any other *permanent* injury; (2) where the parent does not administer the punishment honestly but rather to gratify his own evil passions, irrespective of the physical injury inflicted; or (3) where the parent uses cruel or grossly inappropriate procedures or devices to modify a child's behavior.

*Id.* (cleaned up) (citations and quotation marks omitted).

Here, there was overwhelming, uncontradicted evidence that Mr. Demick inflicted the injuries on Scott with malice. On each occasion, Mr. Demick beat Scott

for a lengthy period of time, stopping only when Mr. Demick grew exhausted. Mr. Demick cursed at Scott while he beat him, threatened to beat him if he disclosed the abuse, and would actively try to goad Scott into physical conflict by cursing, hitting, and shoving him on a daily basis. Every day, Mr. Demick told Scott that he did not care if he failed school and starved, that he hated Scott, and that he wanted Scott gone. The State introduced overwhelming evidence that Mr. Demick's acts were not within the bounds of lawful corporal punishment because he "did not act honestly in the performance of duty, according to a sense of right, but rather under the pretext of duty, for the purpose of gratifying malice," *id.* at 229 796 S.E.2d at 836 (cleaned up) (citation and quotation marks omitted), and Mr. Demick therefore cannot show the requisite prejudice on plain error review. *See, e.g., State v. Jones*, 280 N.C. App. 241, 262, 869 S.E.2d 509, 524 (2021) ("Overwhelming evidence of guilt can defeat a plain error claim on prejudice grounds." (citation omitted)).

## G. IAC Claim

By alternative argument, Mr. Demick contends that all the errors alleged above, if not prejudicial, amounted to IAC. We dismiss this argument without prejudice to Mr. Demick filing an MAR in the trial court.

### 1. *Standard of Review*

We review IAC claims *de novo*. *State v. Graham*, 200 N.C. App. 204, 214, 683 S.E.2d 437, 444 (2009). They are addressable on the merits only if the claim can be resolved on the cold record. *State v. McNeil*, 371 N.C. 198, 216-17, 813 S.E.2d 797,

811 (2018). Under a valid IAC claim:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693 (1984). There is a strong presumption that counsel's conduct amounted to sound trial strategy and did not fall under an objective standard of reasonableness. *Id.* at 689, 80 L. Ed. 2d at 694. When the IAC claim cannot be resolved on the appellate record, the proper disposition is to dismiss the IAC claim without prejudice to the defendant filing an MAR. *McNeil*, 371 N.C. at 216-17, 813 S.E.2d at 811.

### 2. *Dismissal is Required*

Having afforded Mr. Demick relief on his sentencing arguments, and in light of our holdings that his motion to dismiss and verdict sheet arguments fail to demonstrate error, any IAC claim must rise or fall on the alleged instructional errors related to lesser-included offenses and corporal punishment. However, this Court has observed that:

> strategic and tactical decisions such as whether to request an instruction or submit a defense are "within the exclusive

> province of the attorney." *State v. Rhue*, 150 N.C. App. 280, 290, 563 S.E.2d 72, 79 (2002), *appeal dismissed and disc. review denied*, 356 N.C. 689, 578 S.E.2d 589 (2003). Trial counsel are thereby given wide latitude in their decisions to develop a defense, and "[s]uch decisions are generally not second-guessed by our courts." *State v. Lesnane*, 137 N.C. App. 234, 246, 528 S.E.2d 37, 45, *appeal dismissed and disc. review denied*, 352 N.C. 154, 544 S.E.2d 236 (2000).

*State v. Phifer*, 165 N.C. App. 123, 130, 598 S.E.2d 172, 177 (2004).

"[T]he determination of whether a defendant's . . . counsel made a particular strategic decision remains a question of fact, and is not something which can be hypothesized." *State v. Todd*, 369 N.C. 707, 712, 799 S.E.2d 834, 838 (2017). When the record is silent on that question of fact—as in this case—the appropriate action is to allow an evidentiary hearing by MAR. *Id.* We therefore dismiss Mr. Demick's IAC claim without prejudice to filing an MAR with the trial court.

## H. *In Camera* Review of Juvenile Records

In his final argument, Mr. Demick requests we review Margot's sealed juvenile records to determine whether the trial court erred in precluding their disclosure to Mr. Demick. A defendant accused of the sexual abuse of a minor may appeal a trial court's decision not to produce sealed juvenile or social services records after *in camera* review on constitutional grounds. *State v. Tadeja*, 191 N.C. App. 439, 449-50, 664 S.E.2d 402, 410-11 (2008). We review the trial court's decision to withhold and seal the records under the *de novo* standard. *Id.*

Release of such documents are required after *de novo* review if they are "both

favorable to the accused and material to either his guilt or punishment." *Id.* (citations omitted). Having examined the sealed documents, we conclude that none of them have any relevance to or bearing on Margot's testimony specifically or Mr. Demick's case generally; as such, they contain nothing "favorable to the accused and material to either his guilt or punishment." *Id.* We therefore hold that the trial court appropriately withheld and sealed the documents in question.

### III.   CONCLUSION

For the foregoing reasons, we: (1) remand the judgments for resentencing without consideration of the aggravating factor found by the jury and at the lower classification levels for the offenses contained in file nos. 14CRS000736 and 14CRS051293; (2) hold no error, no prejudicial error, or no plain error as to Mr. Demick's remaining arguments; and (3) dismiss his IAC claim without prejudice to filing an MAR with the trial court.


REMANDED FOR RESENTENCING; NO ERROR IN PART; NO PREJUDICIAL ERROR IN PART; NO PLAIN ERROR IN PART; IAC CLAIM DISMISSED WITHOUT PREJUDICE.

Chief Judge STROUD and Judge CARPENTER concur.